**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Ky'Eisha Rayford f/k/a Ky'Eisha Coleman,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TransUnion LLC,<br><br>　　　　　Defendant. | Civil Action No: 1:22-cv-896<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2.    Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3.    Congress enacted 15 U.S.C. § 1681 *et seq*. (the "FCRA") to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

6.      Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

7.      Ky'Eisha Rayford f/k/a Ky'Eisha Coleman ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendant TransUnion LLC ("Defendant") regarding erroneous reports of derogatory credit information and Defendant's failure to maintain maximum possible accuracy as to Plaintiff's credit reports.

8.      While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

9.      Unless otherwise stated, all the conduct engaged in by Defendant took place in Indiana.

10.     Defendant committed each of these violations knowingly, willfully, and intentionally, and Defendant did not maintain reasonable procedures to assure maximum possible accuracy of information about Plaintiff.

11.     Through this Complaint, Plaintiff does not allege that any state court judgment was entered in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

12.     Jurisdiction of this Court arises under 28 U.S.C. § 1311 and 15 U.S.C. § 1681 *et seq*.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

14.     Plaintiff resides in this District.

**PARTIES**

15.     Plaintiff is an adult individual and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

16.     Defendant is a business entity doing business in the Southern District of Indiana.

17.     Defendant's registered agent address is: The Prentice-Hall Corporation System Inc., 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

18.     Defendant regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

19.     Defendant is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

20.     Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

21.     Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

22.     Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendant is liable to Plaintiff for the relief prayed for herein.

**FACTUAL ALLEGATIONS**

23. On or about April 2, 2021, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 21-01397-RLM-7 (the "Bankruptcy").

24. Defendant received notice of Plaintiff's Bankruptcy petition.

25. Debts related to accounts with Capital One Bank USA NA, Capital One/Walmart, Comenity Bank/Vctrssec, Comenity Bank/Justice Credit Card, Kohls Department Store, Nicholas Financial Inc., Swiss Colony/Montgomer, and Turner Acceptance Corp (collectively, the "Accounts") were listed in Plaintiff's Summary of Assets and Liabilities filed in the Bankruptcy on April 14, 2021.

26. Defendant received notice of Plaintiff's Summary of Assets and Liabilities.

27. On or about July 12, 2021, Plaintiff received a discharge order in Plaintiff's Bankruptcy.

28. Plaintiff's debts on the Accounts were discharged as a result of the discharge order in the Bankruptcy.

29. Defendant received notice of Plaintiff's bankruptcy discharge.

30. On or after July 12, 2021, Plaintiff owed no balances on the Accounts.

31. However, Defendant reported inaccurate, incomplete, and/or materially misleading information after Plaintiff's discharge order in the Bankruptcy as discussed herein.

32. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about what otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

### *Defendant's Reporting of the Accounts*

33. Sometime after November 29, 2021 Plaintiff received and reviewed a TransUnion LLC credit report from Defendant (the "Credit Report").

4

34.   In a public records section of the Credit Report, Defendant identified that Plaintiff filed for bankruptcy on April 2, 2021, and had a date paid of July 12, 2021, along with a note that the bankruptcy was "CHAPTER 7 BANKRUPTCY DISCHARGED".

35.   The Credit Report also stated that Plaintiff had a balance on the following accounts:

    a.   Capital One Bank USA NA – balance of $658.00

    b.   Capital One/Walmart – balance of $440.00

    c.   Comenity Bank/Vctrssec – balance of $419.00

    d.   Comenity Bank/Justice Credit Card – balance of $468.00

    e.   Kohls Department Store – balance of $467.00

    f.   Nicholas Financial Inc. – balance of $2,759.00

    g.   Swiss Colony/Montgomer – balance $249.00

    h.   Turner Acceptance Corp – balance of $4,132.00

36.   This information was false, as Plaintiff owed no balances on the Accounts on or after July 12, 2021, due to the discharge order entered in Plaintiff's Bankruptcy.

37.   Defendant knew this information was false since Defendant received notice of Plaintiff's petition in the Bankruptcy and the discharge order in the Bankruptcy.

38.   It was inaccurate, incomplete, and/or materially misleading for Defendant to report that Plaintiff owed any balances on the Accounts.

***The Impact of Inaccurate or Misleading Information on Consumer Reports***

39.   A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    i.   credit or insurance to be used primarily for personal, family, or household purposes;

    ii.   employment purposes; or

iii.     any other purpose authorized under section 1681b.

40.    As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

41.    A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

42.    The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

43.    The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

44.    Defendant's inaccurate and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

45.    The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

46.    The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See*

http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

47.    FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

48.    A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

49.    Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

50.    Here, the inaccurate and/or materially misleading reporting of the Accounts adversely affects Plaintiff's FICO score.

51.    There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one

risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

52.   Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Defendant's Violations of the FCRA and Plaintiff's Damages*

53.   It is inaccurate and/or materially misleading to report an account has a balance when it has been discharged in bankruptcy.

54.   As evidenced by Defendant's inaccurate reporting of balance data on the Accounts—despite receiving notice of Plaintiff's petition and order for discharge in Plaintiff's Bankruptcy — Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

55.   In an April 26, 2017 blog post Defendant posted on its website, titled "Building Credit After Bankruptcy: One Step at a Time" (the "Blog Post"), Defendant encourages consumers to review their credit reports to make sure that debts that were addressed in bankruptcy are reporting correctly.

56.   The Blog Post specifically states that "Discharged debts should no longer be reported as outstanding, late, delinquent *or having a balance*." (Emphasis added).

57.   Defendant knew that Plaintiff's debts on the Accounts were discharged in the Bankruptcy because Defendant received notice of the petition and order for discharge in the Bankruptcy.

58.   Defendant even reported that the Bankruptcy was "CHAPTER 7 BANKRUPTCY DISCHARGED" in the public records section of the Credit Report.

59.   Despite knowing and proclaiming to the public that discharged debts should not be reported as having a balance, Defendant either ignored or failed to review derogatory information it was reporting about Plaintiff; thus, Defendant failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

60.   Defendant's reporting of the Accounts on the Credit Report was inaccurate and/or materially misleading.

61.   In light of its knowledge of the discharge status of the Accounts and how balances should not be reported on discharged debts, Defendant's inaccurate and/or materially misleading reporting on the Accounts was willful. Plaintiff is, accordingly, eligible for statutory damages.

62.   Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

63.   Based upon Defendant's knowledge of the discharged status of the Accounts, even if Defendant could claim it did not willfully violate the FCRA, its conduct was at the very least done with reckless disregard of its obligations under 15 U.S.C. § 1681e(b).

64.   Defendant's inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

65.   Plaintiff was entitled to receive a "fresh start" after the successful conclusion of Plaintiff's Bankruptcy, yet Defendant deprived Plaintiff of that "fresh start" and saddled Plaintiff's Credit Report with thousands of dollars of balances that Plaintiff did not owe.

66.     As a result, by reporting inaccurate, incomplete, and/or materially misleading account information, Defendant's acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

67.     The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than Plaintiff otherwise would.

68.     Plaintiff's credit report has been published to and/or accessed by third parties while the inaccurate, incomplete, and/or materially misleading information on the Accounts was present.

69.     As a result of the inaccurate, incomplete, and/or materially misleading information on the Accounts being publicized, Defendant defamed Plaintiff.

70.     Creating the false impression that the Accounts contained a balance creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's TransUnion LLC credit reports that is engaged in judgment-based lending.

## FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

71.     Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

72.     The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to Defendant.

73.     The above-described violations by Defendant were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

74.     As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant

to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

75.    In the alternative, Defendant was negligent in its actions, which allows Plaintiff to recover under 15 U.S.C. § 1681o.

76.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendant.

## REQUEST FOR A JURY TRIAL

77.    Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

1.    A declaratory judgment that Defendant's actions as discussed herein are unlawful;

2.    Plaintiff's actual damages from Defendant;

3.    Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from Defendant;

4.    Punitive damages from Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5.    An award of costs of litigation and reasonable attorneys' fees from Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6.    Any other relief the Court may deem just and proper.

Dated: May 6, 2022

Respectfully Submitted,


By:  /s/Richard J. Shea

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com